Anne BISTLINE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

F. M. BISTLINE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

F. M. BISTLINE and Anne Bistline,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Nos. 1885–1887.

United States District Court
D. Idaho, E. D.

Nov. 1, 1956.

F. M. Bistline, R. Don Bistline, and Beverly B. Bistline, Pocatello, Idaho, for plaintiffs.

Arthur L. Biggins, Atty., Dept. of Justice, Washington, D. C., for defendant.

TAYLOR, District Judge.

The plaintiffs, husband and wife, filed these actions against the United States to recover income taxes which they aver were erroneously assessed and collected.

This Court has jurisdiction to decide these matters. 28 U.S.C.A. § 1346(a)(1).

Two issues are presented here: (1) Were the profits realized by these taxpayers from the sale of real estate properly taxed as ordinary income? (2) Were expenditures incurred by F. M. Bistline in traveling to and attending the Practicing Law Institute in New York City deductible as business expenses?

The taxpayers filed separate income tax returns for the years 1946 and 1947, and a joint return for 1948, in which they reported profits realized from the sale of real estate as long-term capital gains. The Internal Revenue Service reviewed those transactions, determined that during the years in question F. M. Bistline was engaged in the real estate business and held the said property primarily for sale to customers in the ordinary course of his business, and ruled that the gains from such sales constituted ordinary income.

During 1946 F. M. Bistline, in 15 separate transactions, sold 34 vacant lots for a net profit of $10,950.26. He entered into seven sales in 1947 in which he disposed of 10 vacant lots and a 51.03-acre tract for a net profit of $9,033. He participated in 12 transactions in 1948 involving the sale of 24 vacant lots, all of Block 40 in the city of Pocatello, Idaho, the south half of Block 4, Inglenook Acres, and a tract of land sold to the Westvaco Corporation, and made a net profit of $12,291.74. The taxpayer, an attorney, has been admitted to practice in Idaho since 1920, and has maintained his own law office since 1923. The net income from his legal practice in 1946 amounted to $860; in 1947, $934.

The evidence shows that F. M. Bistline bought and sold substantial tracts of real estate during the past twenty years, both in his own behalf and in conjunction with others, and that he participated in two different "investment pools". In 1936 he and A. Y. Satterfield, a licensed realtor, bought, as co-owners, a number of city lots at county tax sales. Between 1936 and 1946 they made approximately 100 purchases and 100 sales of real property. In 1937 F. M. Bistline and Paul Evans, who is and has been in the real estate business for a number of years, purchased 3,000 acres of land in the "Michaud flats" area at a Power County tax sale. In 1939 they bought 77 acres in Bannock County, which subsequently became known as "Fremont Heights", from the receiver of the Citizens Bank and Trust Company.

Evans testified that all the property which they purchased jointly was held for sale "if the price was satisfactory".

"Q. That property [Fremont Heights] was being held for sale, too, wasn't it? A. Naturally.

"Q. If the price was satisfactory? A. Naturally.

"Q. Just like any of the other property you owned with Mr. Bistline? A. So far as I am concerned anything is for sale if the price is right.

"Q. And you bought quite a bit of other property with him in Bannock County? A. Some properties with him.

"Q. In Bannock County? A. Yes.

"Q. And Power County? A. Yes.

"Q. And your testimony that all this was held for sale if the price was satisfactory would apply to all these properties, wouldn't it? A. I guess it would."

F. M. Bistline also admitted, on cross-examination, that he purchased large numbers of lots at tax sales with the intention of reselling them at a profit.

"Q. Now in buying these lots would it be fairly correct to say you bought them with the intent to sell them at a profit? A. I bought them with the hope of selling them at a profit."

The Bistline Realty Company, a corporation, was formed in 1937, and F. M. Bistline was elected president. In 1940, when the realty company moved into new quarters, he established his law office in the rear of the premises. His real estate holdings were listed in a card catalogue maintained in the company's office, and the final sales of this property were negotiated in his law office. Rolland H.

Smith, then office manager of the realty company, testified as follows:

"Q. And I believe you said sometimes people would come in and inquire about those properties? A. Yes.

"Q. And you told them they were available? A. Yes.

"Q. Wasn't that what you testified to? A. Yes.

"Q. And that is a fact? A. Yes."

On December 31, 1945, F. M. Bistline moved his law office to another building in Pocatello, and sold his interest in the Bistline Realty Company to Smith. The former's real estate holdings continued to be listed in the company's card catalogue.

Property which a taxpayer holds primarily for sale to customers in the ordinary course of his trade or business is expressly excluded from the statutory definition of capital assets. Section 117(a) (1), Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) (1). "While the purpose for which the property was acquired is of some weight the ultimate question is the purpose for which the property is held. Richards v. C. I. R., 9 Cir., 81 F.2d 369, 106 A.L.R. 249." Rollingwood Corporation v. Commissioner, 9 Cir., 190 F.2d 263, 266. The facts necessary to create the status of one engaged in a "trade or business" depend primarily on the frequency or continuity of the transactions claimed to result in a "business" status. Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, 610; Rollingwood Corporation v. Commissioner, supra; Palos Verdes Corp. v. United States, 9 Cir., 201 F.2d 256, 258–259; Stockton Harbor Industrial Co. v. Commissioner, 9 Cir., 216 F.2d 638, 650, certiorari denied 349 U.S. 904, 75 S.Ct. 581, 99 L.Ed. 1241.

F. M. Bistline's sales of real estate during 1946, 1947 and 1948 were frequent and continuous. He admitted that he purchased a large number of lots with the purpose of reselling them for a profit. Paul Evans testified that the real estate he and F. M. Bistline purchased jointly was held for sale. Rolland H. Smith stated that the property owned by F. M. Bistline and listed with the Bistline Realty Company was "available" to prospective purchasers.

The plaintiffs have the burden of proving that the real estate sold during the years in question was held primarily for investment rather than primarily for sale. Cohn v. Commissioner, 9 Cir., 226 F.2d 22, 24. They have not met that burden. The Internal Revenue Service correctly treated the gains from such sales as ordinary income.

In July, 1948, F. M. Bistline and his wife traveled to New York City, where he enrolled in a two-week course in federal taxation at the Practicing Law Institute. He also attended the Lions Convention while in New York. F. M. Bistline's testimony is that his travel expenses for the trip to New York and his hotel expenses incurred while attending the institute amounted to $295.20. It is undisputed that his expenditures for tuition and books totaled $140. Those amounts, in the total sum of $435.20, were deductible as business expenses. F. M. Bistline was reimbursed for his expenses incurred on the return trip, and consequently such expenditures were not deductible.

Counsel for defendant may prepare findings of fact, conclusions of law and a proposed judgment, serve copies thereof upon counsel for the plaintiffs and submit originals to the Court for its approval.